Cook *v.* Lewis.

---

(\*) COOK *versus* LEWIS AND NICKELS, *his trustee.*

Under R. S. c. 107, the executor or administrator of a deceased co-partner is bound to include in his inventory the co-partnership estate for distribution.

The prior right of administering upon such estate belongs to the survivor, upon his giving a bond "for the benefit of all persons interested in the estate."

Until the survivor have given such bond, he has no power to dispose of any part of the company estate.

If he decline to give such bond, the executor or administrator of the deceased partner, on giving a prescribed bond, is to take the partnership estate into his own possession for administration.

In such case, a sale of partnership goods by the survivor is unauthorized and void, and notes given for the goods so sold are without consideration.

Of such goods, the administrator is entitled to the immediate possession; and the purchaser, therefore, is not chargeable as trustee in any suit against the surviving partner.

ON FACTS AGREED.

Hall & Lewis were copartners, transacting business under the name of Hall & Lewis. Hall died in July, 1849. At that time, though the company was insolvent, there were goods

Cook *v.* Lewis.

on hand amounting to $1471. In Nov. 1849, Lewis, as surviving partner, sold the goods to Nickels, taking therefor his unnegotiable note, payable to Lewis, as surviving partner, at the same time informing Nickels that the money, when paid upon the note, would go to discharge company debts.

Lewis declined to administer upon Hall's estate, and thereupon administration of that estate and of the co-partnership effects was committed to L. M. Hall, to whom Lewis delivered the note. [The case omits to show whether the sale was made before or after the administrator was appointed; or whether the note was delivered to the administrator before or after the commencement of this suit; or whether the suit was commenced before or after the administrator was appointed.]

This is an action of assumpsit against Lewis, as surviving partner, for a debt due from the company.

The question for decision is merely whether Nickels is chargeable as trustee.

*Freeman*, for the plaintiff.

If the trustee is liable, it must either be because of his having given the note, or, if the sale to him was illegal, then for having in possession the goods belonging to the late firm. It is not proposed to trouble the Court with an argument on either of those alternatives, but simply to suggest that the statute, bearing upon the case, does not clearly indicate the same course to be pursued, and the same consequences and liabilities to be involved, in the settlement of partnership estates, where one of the partners has deceased, as in the settlement of the insolvent estate of an individual deceased.

There is good reason to believe that, as a surviving partner can be sued by a creditor of the firm, so the property of the partnership in the hands of a third person, can be reached by the trustee process.

*Burbank*, for the trustee.

The case depends upon the construction of R. S., c. 107.

The manifest intent of the law is, that whatever is liable to distribution by the administrator should be exempt from

attachment. *Martin* v. *Abbott*, 1 Greenl. 333; *Patterson* v. *Patten*, 15 Mass. 473; *Rich* v. *Reed*, 22 Maine, 28; *Page* v. *Smith*, 25 Maine, 256.

Lewis, the surviving partner, refused to give the bond prescribed in § 28. The administrator, L. M. Hall, was then required to take the company property into his hands for settlement. By that statute, all authority of the surviving partner over the property, is taken away. No valid sale could be made after the death of Hall, except by the party who had given the requisite bond. The sale of the goods to Nickels was a nugatory act. Over the goods in his hands, no person except the administrator could have any control. Nickels therefore is accountable only to the administrator. The note which he had given was uncollectable, there having been no consideration for it. It is admitted that the estate of Hall & Lewis was insolvent. If Lewis could sell the property, without giving bond, he might pay to favored creditors, and a *pro rata* distribution be defeated. This would be to sanction a great wrong. As the estate was insolvent, Lewis could have no interest in it, further than that the property should be appropriated to payment of the debts. This it is the administrator's duty to do. Hence Nickels is not chargeable as trustee.

APPLETON, J. — Upon the death of one of the partners, the firm of which the deceased was a member is dissolved, and the law contemplates an entire cessation of its business. The goods and effects in possession are held by the survivor and the representatives of the deceased, as tenants in common. All suits upon outstanding claims, must be brought by or against those surviving. All rights of action belong to them at law, and they have the exclusive right to reduce them to possession, and when that is done, they are to be regarded as trustee for the partnership and the representatives of the deceased partner. If there be danger of their misapplication of the funds of the late firm, they will be restrained from interfering in the settlement of its affairs, and their management will be withdrawn from the negligent or fraudulent survivor

or survivors. The common law is powerless in the enforce-
ment of right, or the prevention of wrong, by means of any
remedial process dealing specifically with the goods and chat-
tels of the firm, as by enjoining the survivor from interfering
with them and appointing a receiver to whose efficient and re-
liable control they may be entrusted. To prevent the fraudu-
lent withdrawal of assets, and the misapplication of funds, to
stay the hand of waste, to entrust the disposition and man-
agement of the affairs of the firm to those who are suitable
and trustworthy to supervise and control their settlement,
could be successfully accomplished only through the interven-
tion of a Court of Equity.

We have thus briefly alluded to the law as it existed before
the passage of the stat. of 1835, c. 191, which was reënacted
by R. S. c. 107, by which great and important alterations
have been made. As this statute, so far as it relates to the
administration of co-partnership property, has never received
a judicial construction, it will become necessary to examine,
with care, the several sections relating thereto, and to deter-
mine the direction and extent of the changes there introduced,
as they may have a bearing upon the decision of the case be-
fore us.

By R. S., c. 107, § 26, the executor or administrator on
the estate of any deceased member of a co-partnership, is
directed " to include in the inventory which he is by law
required to return to the Judge of Probate, the *whole of the
partnership estate, goods and chattels, rights and credits, ap-
praised at its true value,* as in other cases; but the appraisers
shall carry out into the footing an amount equal only to the
deceased's proportional part of the co-partnership interest."
To enable this appraisal to be made, it is provided by § 32,
that " every surviving partner, on the demand of any adminis-
trator of a deceased co-partner, shall exhibit to the appraisers
the partnership property belonging to the firm *at the time of
the death of such deceased partner,* for appraisement." In
case of neglect or refusal on the part of such survivor, com-
pulsory process is given to the Judge of Probate, by § 33, to

enable him to enforce compliance with the requirements of the preceding section.

The amount and value of the co-partnership estate having thus been ascertained by appraisal, the preference in administration, by § 27, is given to the survivor, upon his giving a bond " for the benefit of all persons interested in the estate," the terms of which are prescribed by § 28. The survivor thus appointed may be cited to account, and the Judge of Probate is to adjudicate upon the same, " as in the case of an ordinary administrator, and the parties interested shall have the like remedies by means of such bond, for any misconduct or neglect of such survivor or survivors, as may be had against administrators."

In case the survivor neglect or refuse to give the bond, then the executor or administrator on the estate of the deceased partner is authorized by § 30, in giving bond as provided by § 32, forthwith to " take the *whole partnership estate, goods and chattels, rights and credits into his own possession.*" The surviving partner, by § 32, is directed to surrender to him on demand, all the property of such partnership, including their books and papers and all necessary documents pertaining to the same," and to " afford all reasonable information and facilities for the execution of his trust," and in case of his neglect or refusal to comply with these statutory requirements, he is made subject to the summary process provided by § 33.

It is thus evident that the object and intent of the statute was, that ample security should be given for the protection of all interested as a preliminary to granting administration on the partnership estate, whether its affairs were to be closed by one of its surviving members or by the administrator on the estate of the deceased partner. The necessity of applying to a court of equity is obviated by giving the Judge of Probate the same powers in the case of a partnership administration as in any other case of administration. It places the property under the control of an administrator, who has given security for the faithful performance of his duties, and who may be removed upon proof of misconduct. It thus most

effectually protects the rights of the creditors and the representatives of the deceased partner which before were in peril from the fraud or negligence of the survivor, and affords a jurisdiction where all controversies may be summarily determined and speedily enforced. It substitutes an administration with security for its due performance for one without. It requires not merely that the estates of the deceased partner but of the firm of which he was a member should be settled through the probate office and under the supervision of the Judge of Probate.

Each and every provision tends to show that no sale of the goods, and that no transfer or disposition of the effects of the partnership, can be legally made before the appointment of a partnership administrator. An appraisal is required by § 26, but an appraisal would be but an idle ceremony except as preparatory to giving the required bonds and taking administration. If the survivor might legally sell, he could do it equally well before, as after an appraisal, and if before there would be nothing to appraise. By § 27, the property appraised is to remain with the survivor until delivered to the administrator who shall have given the requisite bonds. But if sold, it cannot remain and be delivered up, nor can the administrator "take the whole partnership estate, goods and chattels, as rights and credits into his possession" as he is empowered to do by § 30. If the sale would be lawful, no compulsory power should have been given by § 33, for if the survivor can lawfully sell or transfer the effects of the firm, *a fortiori* should he be entitled to retain them. If the survivor can legally sell, he may sell and transfer the whole partnership estate and utterly disobey the requirements of the statute and such disobedience will be deemed right and the requisitions of law and the rights of all will be subordinated to his will. But such conclusions cannot be admitted. The conclusion then is, that no surviving partner can legally dispose of the partnership property except as an administrator duly appointed.

The case finds that Hall has been appointed administrator

on the estate of the deceased partner as well as on that of the firm. The defendant Lewis having neglected or refused to give the required bonds, the sale by him to the trustee was without legal authority and of itself passed no title. The trustee is consequently liable to the administrator for the property in his hands and must be discharged.

In *Thompson* v. *Lewis*, 34 Maine, 167, the right to attach the interest of one partner was considered and the case of *Whitney* v. *Munroe*, 19 Maine, 42, was reäffirmed. The administrator of the firm had not been appointed and the questions arising under R. S., c. 107, were not discussed.

*Trustee discharged.*

SHEPLEY, C. J., and TENNEY, RICE and HATHAWAY, J. J., concurred.